1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

4  LISA DANIELS, individually and on behalf of )
   all others similarly situated,                )

5                                          )      Case No.: 2:20-cv-00453-GMN-DJA
                        Plaintiffs,        )

6           vs.                            )      **AMENDED[1] ORDER**
                                           )

7  ARIA RESORT & CASINO, LLC; inclusive,   )
                                           )

8                       Defendant.         )
                                           )

9                                          )
   _____)

10

11          Before the Court is the Joint Motion for Approval of Class Settlement, (ECF No. 37),

12  filed by Plaintiff Lisa Daniels, individually and on behalf of all others similarly situated,

13  (collectively, "Plaintiffs") and Defendant Aria Resort & Casino, LLC ("Defendant").

14          For the reasons discussed herein, the parties' Joint Motion for Approval of Class

15  Settlement is **GRANTED**.

16  I.      **BACKGROUND**

17          This case arises out of Plaintiffs' employment dispute with Defendant, a hotel and casino

18  on the Las Vegas strip with a variety of gaming operations, including slot machines. (*See* Am.

19  Compl. ¶¶ 1–5, 11–30, ECF No. 6).  Plaintiffs worked as Guest Services Representatives

20  ("GSRs"), High Limit Cashiers, "Slot I's," or Slot Department personnel in Defendant's Slot

21  Department (collectively, the "putative class"). (*See id.* ¶¶ 11, 40).  On March 4, 2020,

22  _____

23  [1] The Court GRANTS the parties' Joint Motion for Reconsideration, (ECF No. 39), because the Court finds that
    it committed clear error by applying Rule 23 notice requirements to this FLSA action. *See Genesis Healthcare*

24  *Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (noting that Rule 23 class action cases are "fundamentally different
    from collective actions under the FLSA"); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir.

25  2001) (concluding that the need to correct clear error is grounds for reconsideration).  The Court therefore
    STRIKES the previous Order, (ECF No. 38).

Plaintiffs filed a Class Action Complaint against Defendant, alleging that, during their employment, Defendant required them to participate in the Slot Department tip pool (the "tip pool") with managers and supervisors in violation of the Fair Labor Standards Act ("FLSA"); specifically, 29 USC § 203(m)(2)(B) ("Section 203(m)"). (*See id.* ¶¶ 23–43, 56-71).  Plaintiffs allege that Slot Supervisors, Slot Shift Managers, and Slot Assistant Managers ("Casino Managers") that withdrew amounts from the tip pool, were "managers" within the meaning of Section 203(m), and thus were prohibited from participating in the tip pool with Plaintiffs. (*See id.*).

On December 23, 2020, the Court stayed the case to allow the parties to participate in early mediation. (*See generally* Order, ECF No. 29).  The parties note that they performed informal discovery during the stay, which revealed that Slot Supervisors were non-exempt employees; thus, they were properly withdrawing from the tip pool, meaning that they were part of the putative class. (Joint Mot. Approval Collective Action Settlement ("Joint Mot.") 3:22–4:2, ECF No. 37).  Similarly, the parties assert that they discovered other new putative class members: seven High Limit Slot Cashiers of the Cage Department, which are separate from the High Limit Cashiers of the Slot Department. (*Id.* 4:2–5).  The parties agree that these seven High Limit Slot Cashiers were entitled to participate in the tip pool pursuant to the Slot Toke Bylaws, meaning that they could have a colorable claim under Section 203(m). (*Id.* 4:5–19).  Thus, the parties seek leave for Plaintiffs to amend their Complaint to include the Slot Supervisors and High Limit Slot Cashiers in the putative class. (*Id.* 4:21–5:2).

On June 10, 2021, the parties engaged in settlement discussions during mediation and reached a settlement. (*Id.* 5:3–8); (Joint Status Report 1:19–22, ECF No. 35).  The instant Motion followed.

///

///

## II.    **LEGAL STANDARD**

"FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015).  "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009-JCM-PAL, 2017 WL 721244, at *4 (D. Nev. Feb. 23, 2017).  The FLSA, however, does not "expressly set forth criteria for courts to consider in determining whether an FLSA settlement should be approved, nor has the Ninth Circuit established any particular criteria." *Id.*  District courts may approve settlements in FLSA suits "to promote the policy of encouraging settlement of litigation" when a proposed settlement "reflect[s] a reasonable compromise over issues." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  Thus, although Rule 23 does not expressly apply in FLSA actions, "[i]n evaluating the fairness and reasonableness of a FLSA settlement, the majority of Rule 23's fairness factors are instructive and relevant." *Gamble*, 2017 WL 721244, at *4.  If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement.

## III.    **DISCUSSION**

The instant Motion seeks preliminary approval of the parties' Proposed Settlement and requests that the Court schedule a Final Approval Hearing. (Joint Mot. 2:3–5).  In the Motion, Plaintiffs assert that the proposed settlement is fair, adequate, and reasonable. (*See id.* 17:1–5).  Plaintiffs additionally claim that the proposed method of class notice is appropriate. (*Id.* 2:13–16, 8:17–9:6).  The Court first analyzes whether the proposed settlement is reasonable.

///

### a.  Fairness, Reasonableness, and Adequacy of Proposed Settlement

The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### i.    Strength of Plaintiffs' Case and Risk of Further Litigation

With respect to the first two *Churchill* factors, the Court must weigh the "strength of [the plaintiffs'] case relative to the risks of continued litigation." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).  Approval of a class settlement is appropriate in cases in which "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, the parties contest the strength of Plaintiff's case; they disagree on whether Casino Managers are considered "managers" or "supervisors" within the meaning of Section 203(m), such that they are prohibited from being part of the tip pool. (*See* Joint Mot. 13:7–14:3).  The parties then contend that "[g]iven the conditional certification process and genuine legal disputes, it would be well over a year before the matter proceeds to trial." (*Id.* 15:11–13).  They also maintain that given the legal dispute about the meaning of the terms "managers" and "supervisors" under Section 203(m), "there is a significant likelihood that appellate practice could be required, regardless of which party prevails," which would require expending more

resources than the large amount that are already necessary to litigate the matter at this stage. (*Id.* 15:13–17). Accordingly, because settlement eliminates this lengthy process, and further litigation may not improve the outcome, the Court finds that the first two factors weigh in favor of granting preliminary approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

ii.    Risk of Maintaining the Class Status

Regarding the third *Churchill* factor, the Court considers the risk of maintaining class action status through the duration of the case. Under Rule 23(c), an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The parties acknowledge that the "case involve[s] more risk than most collective actions as it involve[s] a legal issue of first impression based on" the parties' dispute over the definition and application of the terms "managers" and "supervisors" under Section 203(m). (Joint Mot. 20:22–23:1). The parties are also uncertain about how this Court may rule on that legal issue. (*See id.* 21:9–13, 17:1–5). Given the uncertainty of this suit, the Court is satisfied that there are risks associated with pursuing and maintaining the instant class action. Accordingly, this factor weighs in favor of granting preliminary approval.

iii.    Amount Offered in Settlement

With respect to the fourth *Churchill* factor, the Court analyzes the proposed settlement amount. In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of

itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, the Settlement Agreement provides for the creation of a $300,000 common fund, minus $90,000 in attorneys' fees, $15,000 in a service award to Plaintiff Lisa Daniels, and up to $8,000 in fees to pay the Claims Administrator. (Collective Action Settlement Agreement Release ("Settlement Agreement") §§ 4(a)(2), 4(a)(4), 4(a)(5), Ex. 1 to Joint Mot., ECF No. 37). The remaining $187,000 will be available to a class of potentially 67 persons, with each person other than the High Limit Cage Cashiers receiving a pro rata share. (*See id.* §§ 4(a)(1)(a), 4(a)(1)(b), 4(a)(2)). The settlement amount of $300,000 is reasonable given that "Managers received a total of $247,737 from the Slot Department tip pool during the relevant time period" and it "is more than the total amount" Plaintiffs can recover if the Court finds the Casino Managers are considered "managers" or "supervisors" under Section 203(m). (Joint Mot. 16:3–5, 17:2–5); *see also* 29 U.S.C. 216(b) ("Any employer who violates [Section 203(m)] shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."). Therefore, at this stage, the Court is satisfied that the amount offered in settlement is within the range of reasonableness.

iv.    Extent of Discovery Completed and the Stage of the Proceedings

Next, the Court evaluates the extent of discovery completed and the stage of the proceedings. This action was initially filed on March 4, 2020. (*See generally* Compl., ECF No. 1). To date, the parties have engaged in considerable informal discovery. (Joint Mot. 27:3–12). For example, the parties have: (1) collaborated to find Slot Supervisors, who were non-exempt employees, to be part of putative class; (2) exchanged records of potential damages amounts; and (3) "discussed specific bases for their positions before and during extensive negotiations." (*See id.* 3:22–4:15, 16:2–5, 27:3–6). In addition, "Defendant performed significant

investigation into Plaintiff's allegations and conveyed the results of this investigation to Plaintiff's counsel in the course of settlement discussions." (*Id.* 27:6–8).  Further, the Scheduling Order's date for the completion of discovery, July 21, 2021, has now passed. (*See* Scheduling Order 2:2–4, ECF No. 18).  Therefore, this factor weighs in favor of approval. *See, e.g.*, Abelar v. Am. Residential Servs., L.L.C., No. ED CV19-00726 JAK (JPRx), 2019 WL 6054607, at *4 (C.D. Cal. Nov. 14, 2019) (find the parties satisfied this factor by disclosing a wide range of documents during informal discovery).

With respect to the stage of the proceedings, the Court additionally finds that this factor weighs in favor of approval.  Under this factor, the Court analyzes the degree of case development accomplished prior to settlement to determine whether counsel had sufficient appreciation of the merits of the case before negotiating settlement. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 813 (3d Cir. 1995). Here, the parties engaged in extensive informal discovery, investigating claims, assessing the merits of the case, and exchanging records. (*See* Joint Mot. 3:22–4:15, 16:2–5, 27:3–6). Furthermore, the parties engaged in heavy negotiations during mediation. (*Id.* 3:19–21, 5:3–8). The Court finds that based upon the extent of discovery completed and the current stage of the proceedings, that "counsel had a good grasp on the merits of their case before settlement talks began," and therefore, this factor weighs in favor of granting preliminary approval. *Rodriguez*, 563 F.3d at 967.

v.    Experience of Counsel

Regarding the sixth *Churchill* factor, the Court considers the experience and views of class counsel.  The Ninth Circuit has declared that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378

///

(9th Cir. 1995)).  The parties do not explicitly assert that both Plaintiffs' counsel and Defendant's counsel have experience litigating class actions. (*See* Joint Mot. 27:14–28:7). The parties state that Joey Mott, Plaintiffs' counsel, has approximately ten (10) years of experience in employment law matters, including wage and hour actions. (*Id.* 27:18–28:3).  The parties also explain that Eric R. Magnus, Defendant's counsel, is a partner at Jackson Lewis P.C., has practiced for about sixteen (16) years, and is the Co-Chair of his firm's Class Action and Complex Litigation Practice Group. (*Id.* 27:15–18).  Based on the foregoing, the Court is satisfied that Plaintiffs' and Defendant's respective counsel have adequate experience including personal involvement in complex class action suits and settlements. (*See id.* 27:14–28:7).

vi.   <u>Reaction of the Class Members of the Proposed Settlement</u>

The final *Churchill* factor, the reaction of the class members to the proposed settlement, is inapplicable at this time.  However, upon final fairness review, the Court will consider how this factor impacts the *Churchill* analysis.[2]

**b.  Proposed Award of Attorneys' Fee**

The Court recognizes that it need not directly address a proposed allocation of attorneys' fees until the settlement becomes final.  However, the parties must, to some degree, justify the proposed award at this stage because any award of fees will directly reduce the amount payable to the Putative Class, and thus bears on the present fairness inquiry. *Martinez v. Realogy Corp.*, No. 3:10-cv-00755-RCJ-VPC, 2013 WL 5883618, at *6 (D. Nev. Oct. 30, 2013).

This is a common fund case. (*See* Joint Mot. 2:16–20).  "Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision." *Smith v. One Nevada Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2018 WL 4407251, at *7 (D. Nev. Sept. 16, 2018).  The plaintiffs' lawyers then apply to the Court

---

[2]  The Court does not discuss the seventh *Churchill* factor—participation by government entity—because Plaintiffs do not assert claims against any governmental body or agency it its Complaint. (*See generally* Am. Compl.).

for a fee award from the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class' lawyers occupy a position adversarial to the interests of their clients. *Staton*, 327 F.3d at 970. As the Ninth Circuit has explained,

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Id.* (emphasis added); *see also In re Coordinated Pre–trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

An award of attorneys' fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. The Ninth Circuit has approved either method for determining a reasonable award of fees. *Id.* However, the fee award must always be reasonable under the circumstances. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered a benchmark percentage. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

2000).  In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047–50. In circumstances where a percentage recovery would be too small or too large considering the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Here, Plaintiff's Counsels' request for "up to Ninety Thousand Dollars ($90,000.00) of the Settlement Fund," (Settlement Agreement § 4(a)(5), Ex. 1 to Joint Mot.), resulting in 30% of the Settlement Fund, is within the range of reasonableness as determined by the Ninth Circuit, and in light of the relevant *Churchill* factors discussed *supra*.  However, upon final fairness review, Plaintiffs' Counsel must thoroughly examine the *Vizcaino* factors and provide a Lodestar cross-check to assist the Court in determining the reasonableness of the award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method.").  At this preliminary stage, the Court finds that the proposed award of attorneys' fees is within the range of reasonableness and, therefore, the Court conditionally approves this award.

### c.  Class Representative Service Award

The Proposed Settlement Agreement provides for a "a service award in the amount of $15,000.00" to Plaintiff. (Settlement Agreement § 4(a)(2), Ex. 1 to Joint Mot.).  The purpose of a service award is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*,

563 F.3d 948, 958–59 (9th Cir. 2009); *see also Smith*, 2018 WL 4407251, at *9 (treating "incentive" and "service" awards as the same kind of award). To justify a service award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Without satisfactory elaboration on these points, courts are justified in reducing service awards following the final fairness hearing to a reasonable amount. *See, e.g.*, *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013).

Here, Plaintiff Lisa Daniels alleges that she actively participated in this litigation since its inception, aided counsel's investigation for hours, prepared for mediation, and participated extensively in said mediation that resulted in settlement of the case. (Joint Mot. 25:11–20). Plaintiff, however, does not provide further explanation describing her efforts in detail. During final fairness review, the Court will require analysis of the relevant factors including "the proportion of the payments relative to the settlement amount," "the size of [the] payment," "the actions the plaintiff has taken to protect the interests of the class," "the degree to which the class has benefited from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977; *see, e.g.*, *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016-JST, 2016 WL 5394016, at *8 (N.D. Cal. Sept. 27, 2016) (finding that while $5,000 was a presumptively reasonable incentive award in the Ninth Circuit, such an award in that case was not warranted because plaintiff did not offer details regarding the actions the plaintiff had taken to protect the interests of the class). Without satisfactory elaboration on these points, the Court will reduce the incentive award following the final fairness hearing to a reasonable amount. *See, e.g.*, *Wolph*, 2013 WL 5718440, at *6.

///

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that the Parties' Motion for Reconsideration of Order Denying Joint Motion for Approval of Collective Action Settlement, (ECF No. 39), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's previous Order, (ECF No. 38), is **STRICKEN** in its entirety.

**IT IS FURTHER ORDERED** that the Parties' Joint Motion for Approval of Collective Action Settlement, (ECF No. 37), is **GRANTED**.  Accordingly, the Court **GRANTS** Plaintiff leave to file an amended complaint, **GRANTS** preliminary approval of the settlement, conditionally certifies the class and collective action for settlement purposes, conditionally approves the proposed award of attorneys' fees, and approves the proposed form of notice.  The Court also approves the proposed class counsel, class representatives, and claims administrator. The class representative service award will be determined at the final fairness hearing.

**IT IS FURTHER ORDERED** that the Parties shall appear in person for a Final Approval Hearing on **April 14, 2023, at 10:00 AM** in LV Courtroom 7D before Judge Gloria M. Navarro.

**DATED** this ___23___ day of March, 2023.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT